IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE L. GUTIERREZ et al

Plaintiffs

v.

PEDRO TOLEDO, et al

Defendants

**Civil No. 09-1867 (SEC)**

**OPINION AND ORDER**

Pending before this Court is Defendants Motion for Summary Judgment (Docket # 38), and Plaintiffs' opposition thereto (Dockets ## 46-48). After reviewing the filings, and the applicable law, Defendants' motion for summary judgment is **GRANTED**.

**Procedural Background**

Plaintiffs Jose L. Gutierrez ("Gutierrez"), Gabriel Roman ("Gabriel") and Rafael Roman ("Rafael") (collectively "Plaintiffs") seek relief for the damages they suffered as a result of the alleged illegal search, seizure, false arrest and deprivation of their liberty by members of the Puerto Rico Police Department. Plaintiffs' complaint is premised on Title 42 U.S.C.A. §1983, the Fourth and Fourteenth Amendments to the United States Constitution and several state laws. Plaintiffs brought this suit against Pedro Toledo,[1] the former Police Department Superintendent, Lt. Rafael O. Asencio-Torres ("Lt. Asencio"); Sgt. Aristides Toledo-Garcia ("Sgt. Toledo"); Agt. Glorivette Crespo-Vargas ("Agt. Crespo"), Agt. Jose Caban-Martinez ("Agt. Caban"), Agt. Paula Hernandez-Nieves ("Agt. Hernandez"), Agt. Ramon Ruiz-Ayala ("Agt. Ruiz") and Agt. Ramiro González-Nieves ("Agt. González").

---

[1] The claims against Pedro Toledo were dismissed without prejudice. Docket # 26.

**Civil No. 09-1867 (SEC)** 2

Upon conclusion of discovery, on December 31, 2010, Defendants moved for summary judgment, Plaintiffs timely opposed, and Defendants sur-replied.

**Standard of Review**

*FED. R. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d

**Civil No. 09-1867 (SEC)** 3

5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence"); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

When filing for summary judgment, both parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation...Local Rule 56(c).

Local Rule 56(e) further provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record

**Civil No. 09-1867 (SEC)**                                                                                      **4**

material supporting the assertion." Moreover, a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Local Rule 56(e). Local Rule 56(e)(2) further states that, if the opposing party does not respond to a motion for summary judgment, "summary judgment should, if appropriate, be entered against that party." When "a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Id. at 8. The First Circuit has held that when the parties ignore the Local Rule, they do so at their own peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

**Applicable Law and Analysis**

In the present case, Defendants complied with Rule 56, and submitted a Statement of Uncontested Facts (hereinafter "SUF"), numbered, and supported by record citations. In opposition, Plaintiffs filed a motion opposing summary judgment and submitted their opposing statement of facts ("OSF"). Dockets ## 47 & 48. They further filed a statement of additional facts ("ASUF"). Dockets ## 46 & 48. Upon reviewing the record, however, this Court notes that Plaintiffs failed to provide specific record citations when denying Defendants' statements. See OSF ¶¶ 2, 3, 29 and 34. Specifically, Exhibit 2, cited in support of said assertions of fact, contains 18 pages of deposition testimony. Notwithstanding, Plaintiffs do not provide a page number, let alone the line numbers that support each opposition.

It is well settled that a party opposing a motion for summary judgment must support each denial or qualification by a record citation as required by Local Rule 56(e), which provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." A

**Civil No. 09-1867 (SEC)**                                                                 5

"court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Local Rule 56(e). Since Plaintiffs did not oppose Defendants' SUF pursuant to Rule 56, this Court will deem uncontested those facts that are properly supported by the record. Similarly, some of Plaintiffs' citations in support of their ASUF lack specific record citations (¶¶ 8, 18), and others do not support the proposed averment of fact (¶¶ 3, 5,[2] 7, 11, 13, 14, 16 & 17). Lastly, Plaintiffs' proposed statement of fact 15 is irrelevant for purposes of the present motion.

Based on the foregoing, the uncontested facts are as follows. On September 1, 2008, Defendants were on duty in the shift from 8:00 p.m. to 4:00 a.m. in the Quebradillas District. SUF at 1; ASUF at 1. Lt. Asencio was supervising the precinct that night. ASUF at 2. At around 12:45 a.m., Agt. Marcos Hernández, the radio operator at the time, received a call from José Ríos Soberal ("complainant"), a resident at Road 113, Km. 9.3, Terranova Ward, Quebradillas, reporting the presence of a suspicious motor vehicle in front of his residence, that he had heard an opening and closing of doors, and alleging that there was someone in his property trying to steal his motor vehicle. SUF at 2; ASUF at 4. According to Agt. González, the complainant reported the presence of a suspicious motor vehicle in front of his residence and that he had heard an opening and closing of doors. ASUF at 6.[3]

Agt. Paula Hernández, who was at the time with Agt. Ruiz, transmitted via radio for officers to be on the lookout for a big black car, similar to a Ford Crown Victoria, with tinted windows, occupied by three (3) individuals, who allegedly tried to steal a car from the property

---

[2] As Defendants correctly point out, pursuant to Sgt. Toledo's inquiry, Agt. González told him that he was the one who was supposed to investigate the complaint. See Docket # 46-2, p. 61, lines 11-18.

[3] Exhibit 3 is not properly authenticated nor shows who gave instructions to complainant to appear at the District Attorney's office the next day. This fact, however, is not relevant for purposes of the present motion.

**Civil No. 09-1867 (SEC)**                                                                                          6

of the complainant. Id. at 3. She also informed that the complainant was watching the suspects' vehicle from his balcony, and informed that the vehicle was traveling on the side road of the Quebradillas' Courthouse towards the traffic light at Road # 2, Quebrada Mala sector, km. 102.2. Id. Agt. Crespo, who was patrolling with Agt. Cabán, indicated via radio that she saw a vehicle with that description leaving the abovementioned intersection, and she requested help since the vehicle was not stopping. Id. at 4.[4] At the time, municipal officers joined the persecution of the vehicle, until they were able to stop the suspects at the Guajataca hill at the Terranova Ward. Id.

In the interim, Sgt. Toledo interviewed the complainant, who indicated that he saw a big vehicle, similar to a Ford Crown Victoria, color black with tinted windows, that was stopped in front of his residence and watched when two individuals got out of said car. Id. at 5.[5] The first one stayed near the car, and the second walked towards the gate of his house. Id. The complainant then heard the individual trying to open the door of his vehicle, a red Mitsubishi Eclipse, that was parked in his garage. Id.

The night of the events around midnight, Plaintiffs were driving around the town of Quebradillas in a black Grand Marquis with tinted windows. Id. at 7, 10 & 11. Although Gutiérrez was driving the car, Rafael and Gabriel Román knew the Quebradillas area very well

---

[4] Plaintiffs contend that this averment of fact is a conclusory statement which is not based on personal knowledge, thus Lt. Toledo's sworn statement should be disregarded by this Court. We note, however, that Lt. Toledo declared that he heard via radio when Agt. Crespo indicated that she saw a vehicle with that description leaving the abovementioned intersection towards Road # 2, and she requested help since the vehicle was not stopping. Thus his statement is based on personal knowledge and is not conclusory.

[5] Plaintiffs also contend that this averment of fact is a conclusory statement which is not based on personal knowledge, thus Lt. Toledo's sworn statement should be disregarded by this Court. This Court notes, however, that Lt. Toledo interviewed the complainant, thus this statement of fact is based on Lt. Toledo's personal knowledge.

**Civil No. 09-1867 (SEC)**                                                                                                7

and they were showing Gutiérrez the way to go. Id. at 8. At some point, Rafael and Gabriel Román got off the car in a road in Quebradillas; there were houses on the other side of the street. Id. at 9.

Plaintiffs were stopped, searched and arrested by the police after 12:40 a.m. Id. at 12. When they stopped Plaintiffs, the police pointed their guns at them. ASUF at 10. Gutiérrez does not know the agent that held him against the car; he did not recognize any of the policemen; currently does not know who these policemen are; and he cannot identify them. SUF at 13 & 15. The police agents did not use force or assault him. Id. at 14. To this date, Gutiérrez does not know the name of the agent who was driving the patrol car to the station or who she is, nor does he know the names of the policemen that were driving the patrol cars in which Rafael and Gabriel were transported. Id. at 16. Gutiérrez cannot tell with certainty what were Lt. Asencio's actions the night of the event. Id. at 25. Gutiérrez also admitted that Agt. Crespo did not intervene with him and that he does not know who Agt. Cabán, Agt. Hernández or Agt. Ruiz are. Id. at 27 & 28. He further admitted that Agt. González was not at the scene where the Plaintiffs were arrested and that he saw Agt. González for the first time at the police station, and that his involvement was completing and signing the complaint. Id. at 29 & 32.

Rafael does not know the name of the officer who put the handcuffs on him; he cannot identify all the officers that were on the scene the night of the events, and stated that he can only identify a few. Id. at 30 & 35. At the scene of the police intervention, he asked in a rude way why the police stopped them. Id. at 24. He also told the police officers that he was going to call his uncle who is a police Sergeant, which he eventually did. Id. at 24.

The police did not forcefully place Plaintiffs in the cell. Id. at 17. Rafael's uncle, Wilfredo Pérez, a Sergeant, arrived at the station and told the officers to remove Plaintiffs' handcuffs. Id. at 18 & 20. He then opened plaintiffs' cell at the Police Station, went inside and removed their handcuffs. Id. at 31. Gutiérrez admitted that Lt. Toledo spoke with Rafael's uncle

**Civil No. 09-1867 (SEC)**                                                                                       **8**

at the police station. Id. at 26. Plaintiffs were informed that they had to be at the State Prosecutor's office in Arecibo the next day at 8:00 a.m. and that they were free to go. Id. at 19. They were also informed that they had to appear the next day at the Courthouse because they were going to be charged with burglary. Id. at 21. Plaintiffs left the police station with Rafael's uncle. Id. at 20.

The next day, Plaintiffs went to the Prosecutor's office in Arecibo. SUF at 22. Sgt. Jessica Pérez, Rafael's aunt, and Agt. González went inside, and spoke with the state prosecutor who told them that charges were not going to be filed. Id. at 22, 23 & 33. Specifically, charges were not filed because the complainant never arrived, and Plaintiffs were let go. Id. at 34.

In their motion for summary judgment, Defendants contend that Plaintiffs failed to establish Section 1983 claims against them; that there is no respondeat supervisory liability under Section 1983 against Sgt. Toledo and Lt. Asencio; and that they are entitled to qualified immunity. As such, this Court will first address the familiar Section 1983 standard.

The Supreme Court has held that Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. See Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989). There are two essential elements of a Section 1983 claim: "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-152 (2nd Cir. 2006); Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005); Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995) (citing Chrongis v. Board of Appeals, 811 F.2d 36, 40 (1st Cir. 1987)). This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. See Gutiérrez-Rodríguez, 882 F.2d 553, 559 (1st

**Civil No. 09-1867 (SEC)**                                                                                          9

Cir. 1989); Mahoney, 424 F.3d at 89. In turn, this second element of causal connection requires that the plaintiff establish that each individual defendant deprived the plaintiff of his/her protected rights, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58 (1978); Gutiérrez-Rodríguez, 882 F.2d at 562; Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989). Furthermore, the defendant's conduct must be shown to be intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. See Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986); Gutiérrez-Rodríguez, 882 F.2d at 562.

As for supervisory liability in §1983 actions, the rule is that "supervisors may only be found liable on the basis of their own acts or omissions." Gutiérrez-Rodríguez, 882 F.2d at 562. In order for a supervisor to be found liable under Section 1983, a plaintiff must show: (1) that the supervisor's own acts or omissions deprived plaintiff of a constitutionally protected right; (2) that his "conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others;" and (3) that there was "an 'affirmative link' between the street level misconduct and the action or inaction of supervisory officials." Id.

*Qualified immunity*

Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In Pearson v. Callahan, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), the Supreme Court reiterated that the qualified immunity inquiry is a two-part test. Maldonado v. Fontanes, 568 F.3d 263, 268-269 (1st Cir. 2009). That is, a "court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. (citing Pearson, 129 S. Ct. at

**Civil No. 09-1867 (SEC)**                                                                                                        10

815-16). The second step of the qualified immunity analysis, in turn, has two aspects; one aspect focuses on the clarity of the law at the time of the alleged civil rights violation and the other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Id. at 269.

Although courts usually address the requisites of a qualified immunity defense sequentially, that is, determining first whether a constitutional violation has been asserted, they "have discretion to decide whether, on the facts of a particular case, it is worthwhile to address first whether the facts alleged make out a violation of a constitutional right." Maldonado, 568 F.3d at 270. However, when a Fourth Amendment inquiry involves a reasonableness question which is heavily dependent on the facts, courts may avoid definitive determinations of the substantive constitutional claims and turn directly to the other prongs of the qualified immunity test. This approach is especially prudent when it is clear that the officers are entitled to immunity based on the other prongs. See Buchanan, 469 F.3d at 168; Tremblay, 350 F.3d at 200. Because we find this approach better suited on the facts before us, our analysis of Plaintiffs' Fourth Amendment claims will proceed directly to the second prong, specifically, whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.

Section 1983 actions frequently turn on this prong of the qualified immunity inquiry, "which channels the analysis from abstract principles to the specific facts of a given case." Wilson, 421 F.3d at 57-58 (citations omitted). More specifically, "qualified immunity remains available to defendants who demonstrate that they acted objectively reasonably in applying clearly established law to the specific facts they faced." Id. (citing Burke v. Town of Walpole, 405 F.3d 66, 86 (1st Cir. 2005). Therefore, under this prong, a defendant "is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest." Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004) (citing Rivera v. Murphy, 979 F.2d 259, 263 (1st

**Civil No. 09-1867 (SEC)**                                                                11

Cir. 1992).

      Insofar as the Fourth Amendment, U.S. Const. amend. IV, protects against unreasonable searches and seizures, when police conduct rises to the level of an arrest, it is a seizure that requires probable cause under the Warrant Clause of the Fourth Amendment. Schubert v. City of Springfield, 589 F.3d 496, 501 (1st Cir. 2009).[6] Moreover, it is well settled that a warrantless arrest must be based on probable cause. United States v. Brown, 500 F.3d 48, 56 (1st Cir. 2007) (citing United States v. Watson, 423 U.S. 411, 417-18 (1976)). A police officer has probable cause when, at the time of the arrest, the officer "acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004); see also Holder v. Town of Sandown, 585 F.3d 500, 505 (1st Cir. 2009) (citing Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

      In determining whether the officer had probable cause, we must view the circumstances from the perspective of a reasonable person in the position of the officer. Holder, 585 F.3d at 505. Probable cause requires only a probability that the defendant committed the crime. Id.; see also Hill v. California, 401 U.S. 797, 804 (1971) (finding that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time.") The only relevant facts are those known to the officer. Id.

---

    [6] This Court notes that Plaintiffs' substantive due process claim, premised on the deprivation of their liberty fails insofar as their claim is really an illegal search and seizure claim that should be, and is, brought under the Fourth Amendment. Graham, 490 U.S. at 395. The Supreme Court has stated that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id.; see also Albright v. Oliver, 510 U.S. 266, 273 (1994). Since an alternative constitutional claim is available in this case, Plaintiff's due process claims on this front cannot prevail. See Wainwright, 548 F.3d at 163.

**Civil No. 09-1867 (SEC)**                                                                                         12

The Supreme Court has held that "the existence of probable cause (and, in turn, the validity of an ensuing arrest) is gauged by an objective standard; as long as the circumstances surrounding the event warrant the officer's reasonable belief that the action taken is appropriate, the arrest is justified." Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997) (citing Scott v. United States, 436 U.S. 128, 137-38 (1978)). "Moreover, though probable cause requires more than mere suspicion, it does not require the same quantum of proof as is needed to convict." Id. (citing United States v. Aguirre, 839 F.2d 854, 857-58 (1st Cir. 1988).

The First Circuit has noted, however, that qualified immunity requires a somewhat lesser showing on this front. Specifically, the issue is "not whether the defendant's actions actually abridged some constitutional right, but, rather, whether those actions were obviously inconsistent with that right." Cox, 391 F.3d at 31 (citations omitted). Accordingly, "in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." Id. This is due to the fact that qualified immunity "eschews a line that separates the constitutional from the unconstitutional and instead draws a line that separates unconstitutional but objectively reasonable acts from obviously unconstitutional acts." Cox, 391 F.3d at 31. That line seeks to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986). Therefore, we must determine whether, at the time of the arrest, an objectively reasonable officer could have concluded that the specific facts added up to probable cause.

Pursuant to the uncontested facts, Defendants acted upon the belief that complainant saw in his property and outside his garage, three individuals in a vehicle similar to the one Plaintiffs traveled in, and that complainant believed that they attempted to steal his motor vehicle. See Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004) (noting that the First Circuit has "affirmed that police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause"). Therefore, we find that a reasonable police officer

**Civil No. 09-1867 (SEC)**                                                                 13

would have understood that he had probable cause to stop and arrest Plaintiffs. That is, a reasonable officer would have believed that a crime was committed and that Plaintiffs were the likely perpetrators. As previously stated, qualified immunity seeks to separate unconstitutional but objectively reasonable acts from obviously unconstitutional acts, proving ample protection to all but the plainly incompetent or those who knowingly violate the law. Defendants in this case do not fall into the latter category.

Moreover, we note that Defendants' conduct in this case is far from grossly negligent, or amounting to a reckless or callous indifference to Plaintiffs' constitutional rights, as required for a Section 1983 claim to prosper. Aside from the fact that Defendants reasonably understood that there was probable cause to arrest them, Plaintiffs admit that Defendants never used force during the intervention or when they were placed in the cell. Additionally, Plaintiffs were released shortly thereafter and were at no time physically or verbally mistreated.[7]

This Court finds that Plaintiffs failed to show that there are genuine issues of material fact that preclude summary judgment. In light of the above, Plaintiffs' Section 1983 claims are **DISMISSED with prejudice**.

*Supplemental state law claims*

Having dismissed Plaintiffs' federal law claims against Defendants, Plaintiffs state law claims against them are also dismissed. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.").

---

[7] Although Plaintiffs proffer that Defendants did not read them their Miranda rights, see ASUF at 12, Gabriel's testimony shows that none of the Plaintiffs ever asked why they were being stopped or arrested. Moreover, no charges were filed or proceedings instituted against Plaintiffs, thus any statements made by Plaintiffs at the time of arrest were not used against them in judicial proceedings.

**Civil No. 09-1867 (SEC)**                                                                 **14**

**Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED.** Plaintiffs' federal claims against Defendants are **DISMISSED with prejudice**, and their state law claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 2nd day of May, 2011.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. Senior District Judge